**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0310n.06

**No. 11-6141**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 24, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| RUSSELL LEE MAZE, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| JERRY LESTER, Warden, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

BEFORE: COOK, GRIFFIN, and KETHLEDGE, Circuit Judges.

GRIFFIN, Circuit Judge.

Petitioner Russell Lee Maze appeals the district court's judgment denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Maze was convicted by a Tennessee state court jury of one count of first-degree murder and one count of aggravated child abuse stemming from the death of his infant son, allegedly the victim of "Shaken Baby Syndrome." He unsuccessfully sought post-conviction relief in the Tennessee state courts, and his subsequent petition for a writ of habeas corpus was denied by the United States District Court for the Middle District of Tennessee. Our court granted a certificate of appealability with respect to the four claims of ineffective assistance of trial counsel raised in Maze's petition. In this appeal, Maze challenges the district court's judgment as it pertains to two of these issues. For the reasons set forth below, we affirm the denial of habeas relief.

I.

On May 3, 1999, petitioner Maze's wife left their home to run an errand after Maze returned from work. Maze was alone with their five-week-old son Bryan Alexander Maze during her absence. Approximately one hour later, Maze called 911 to report that Bryan had stopped breathing. Subsequent testing revealed bruising on Bryan's head and abdomen, conjunctival and retinal hemorrhaging, a fractured clavicle, and severe, irreparable brain damage. Bryan never recovered and died eighteen months later after being discharged from the hospital and placed in certified foster care.

A Davidson County, Tennessee, grand jury indicted Maze on one count of class A felony aggravated child abuse. Maze's ensuing jury trial centered on medical evidence, the central dispute being whether his son's injuries resulted from "Shaken Baby Syndrome" ("SBS"). By Maze's own admission, he was the only person with the infant during the time in question. Although Maze initially denied to the investigating officers that he shook Bryan, he ultimately acknowledged that he had "jostled" the child in an attempt to revive him, yet he insisted that he did not shake Bryan in a violent manner that would have caused his son's extensive injuries.

In January 2000, the jury found Maze guilty as charged. On direct appeal, the Tennessee Court of Criminal Appeals ("TCCA") reversed Maze's conviction and remanded the case for a new trial due to the trial court's failure to properly instruct the jury on lesser-included offenses. *See State of Tennessee v. Maze*, No. M2000-02249-CCA-R3-CD, 2002 WL 1885118 (Tenn. Crim. App. Aug. 16, 2002) (unpublished). However, the TCCA found no merit in Maze's contention that the trial court erred in admitting a child neurologist's testimony regarding the devastating

injuries suffered by Bryan because of the shaking. The TCCA found the testimony to be highly probative of the necessary element of serious bodily injury and not needlessly cumulative. *Id*. at *5–7.

Because Bryan died on October 25, 2000, while Maze's appeal was pending, the State obtained a superseding indictment charging Maze with first-degree felony murder and aggravated child abuse. In April 2004, following a second trial, a Davidson County jury convicted him on both counts. During the trial, the defense aimed at identifying medical mistakes in the prosecution's case and attempted to link Bryan's injuries to pre-existing medical conditions, including the infant's premature birth, neonatal jaundice and liver damage, the mother's pregnancy complications (including hypertension and gestational diabetes), and the adverse side effects from the Hepatitis B vaccine administered to Bryan.[1] Following the guilty verdict, the trial court imposed concurrent sentences of life imprisonment and twenty-five years on the two charges.

On appeal, Maze challenged the sufficiency of the evidence, the trial court's preclusion of certain defense expert-witness testimony, and the jury's alleged exposure to prejudicial extraneous influences from third parties. The TCCA considered and rejected each of these claims and affirmed Maze's convictions. *See Maze*, 2006 WL 1132083.

In August 2007, Maze filed a pro se petition for post-conviction relief in the Criminal Court of Davidson County, Tennessee. In the petition, he argued that he was denied effective

---

[1]A detailed recitation of the evidence is set forth in the TCCA's 2006 opinion. *See State of Tennessee v. Maze*, No. M2004-02091-CCA-R3-CD, 2006 WL 1132083, at *1–14 (Tenn. Crim. App. April 28, 2006) (unpublished).

assistance of trial counsel in multiple respects, in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution and Art. 1, § 9 of the Tennessee Constitution. Maze subsequently filed a state petition for a writ of error coram nobis, claiming that he had discovered medical evidence that his son died as a result of coagulopathy originating from birth-related trauma or other disorders, not child abuse. Attached were the affidavits of two physicians—a pediatric neuroradiologist and a forensic pathologist, who opined that there was nothing in the reviewed medical evidence that was specific for, or characteristic of, non-accidental injury. Maze averred that he only recently discovered this evidence and did not know of its existence at the time of his trial.

A post-conviction hearing was held in the Criminal Court on June 9, 2008. Maze presented as witnesses the neuroradiologist (Dr. Patrick Barnes), a pediatrician (Dr. Edward Yazbak), and his trial attorney. The physicians' testimony supported a theory that Bryan's injuries were not caused by SBS, but rather were non-abusive in origin.[2] In a nutshell, Dr. Barnes testified that for many years the SBS diagnosis rested on the presentation of a triad of injuries (subdural hemorrhage, retinal hemorrhage, and encephalopathy), but that the diagnostic criteria for child abuse had changed substantially in recent years in light of new, rigorous standards of evidence-based medicine and advances in imaging technology, particularly MRIs. Dr. Barnes opined, after reviewing the victim's MRIs, CT scans, x-rays, and medical history, that under both the old and new diagnostic standards, the damage to Bryan's brain was not characteristic of SBS.

---

[2]This lengthy testimony is set forth in full in the TCCA's 2010 opinion and order denying post-conviction relief. *See Maze v. State of Tennessee*, No. M2008-01837-CCA-R3-PC, 2010 WL 4324377, at *1 (Tenn. Crim. App. Nov. 2, 2010) (unpublished).

He was of the opinion that Bryan's injuries were not a result of non-accidental trauma. Dr. Yazbak likewise testified to non-abusive causes of the child's injuries and death. He opined that the infant died of hepatic encephalopathy, liver disease, related to the administration of vaccinations.

Dwight Scott, Maze's trial attorney, testified that, in preparation for Maze's trial, he consulted with a pediatric radiologist (Dr. Boulden) and sent him a copy of the victim's x-rays (not the MRIs, CT scans, or retinal photos), but he did not call Dr. Boulden as a witness because the doctor's conclusion that the victim suffered a fractured clavicle would not have supported the defense. Scott also consulted with another expert, Dr. Cleland Blake, a pathologist, about the evidence (including the MRIs and scans) but likewise decided not to call him as a witness because he was of the opinion that the victim suffered from child abuse or non-accidental trauma. Although Scott attempted to call Dr. Yazbak as an expert witness at trial (to testify about the adverse effects of Hepatitis B vaccines), Scott recalled that he never presented an offer of proof in this regard at trial and his belated pre-trial, in-chambers motion was denied by the trial court, which treated the issue as a discovery notification matter. Scott could not recall if he presented the trial court with Yazbak's affidavit or a letter from him as a proffer of his testimony. Scott testified that after conducting his own research in preparation for trial, he arrived at the conclusion that Dr. Yazbak's theory was "not something that I was going to readily be able to support through his testimony" because it was not in the mainstream of medical opinion at that time.

At the conclusion of the hearing, the Criminal Court issued separate orders denying Maze's petitions for post-conviction relief and for the writ. *See* R. 19-15, ID 1864-72 (order re post-conviction relief) and R. 19-15, ID 1873-82 (order denying writ of error coram nobis).

Maze appealed the order dismissing his petition for post-conviction relief to the TCCA, arguing that trial counsel rendered ineffective assistance of counsel in (1) failing to make an offer of proof regarding the testimony of Dr. Yazbak, and (2) failing to consult with a qualified medical expert regarding imaging evidence of the victim's neurological damage and to call an expert witness at trial to contradict the State's medical evidence regarding the cause of Bryan's neurological injuries. Maze also contended that the post-conviction court erred in denying his petition for writ of error coram nobis because Dr. Barnes' testimony constituted "new evidence." *See Maze*, 2010 WL 4324377, at \*1.

The TCCA, applying the ineffective assistance of counsel standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), issued an opinion denying all post-conviction relief. *Maze*, 2010 WL 4324377, at \*22–28. The court held that Maze failed to show that trial counsel's assistance fell below acceptable standards or that Maze was prejudiced by any aspect of his trial counsel's performance. *Id.* With regard to Maze's petition for a writ of error coram nobis, the TCCA agreed with the Criminal Court that Dr. Barnes' testimony was cumulative and was not "newly discovered evidence" under Tennessee law so as to qualify for the writ; rather, the testimony "serve[d] no other purpose than to contradict or impeach the evidence adduced during the course of the trial." 2010 WL 4324377, at \*28–30. On March 9, 2011, the Supreme Court of Tennessee denied Maze's application for permission to appeal.

Maze, proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court, Middle District of Tennessee, in which he raised four claims alleging that trial counsel was ineffective in failing to: (1) argue that an intervening cause resulted in the victim's death; (2) obtain a change in venue; (3) submit the testimony of eleven medical doctors supporting Maze's case; and (4) consult with a neurologist. The district court denied Maze's petition in its entirety and declined to issue a certificate of appealability.

Following Maze's appeal to this court, we issued an order granting a certificate of appealability as to all issues raised in his habeas petition and granted leave to proceed in forma pauperis. Maze now challenges the district court's adverse judgment only as it pertains to his third and fourth claims for habeas relief ("Ground Three" and "Ground Four"). Because Maze has not raised the first two issues presented in his habeas petition in his appellate brief, these claims are properly considered abandoned and waived on appeal. *Guilmette v. Howes*, 624 F.3d 286, 292 (6th Cir. 2010) (en banc).

II.

In the context of a habeas proceeding, we review the district court's legal conclusions and its determination regarding a petitioner's procedural default of a claim de novo and its factual findings for clear error. *Henderson v. Palmer*, 730 F.3d 554, 559 (6th Cir. 2013); *Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214, we may not grant a writ of habeas corpus to state prisoners seeking relief under 28 U.S.C. § 2254 unless the state court decision denying relief on the merits was "1) 'contrary to' or an 'unreasonable application of' clearly established

federal law; or 2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Peoples v. Lafler*, 734 F.3d 503, 510 (6th Cir. 2013) (quoting 28 U.S.C. § 2254(d)).

AEDPA's standard of review does not apply to claims that have not been properly exhausted in the state courts. *Hanna v. Ishee*, 694 F.3d 596, 606 (6th Cir. 2012); *Jells v. Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008). "If a state court did not entertain a claim, a federal court will not review it where the state court's omission is due either to the petitioner's failure to raise those claims in the state courts while state remedies were available or to the petitioner's failure to comply with a state procedural rule that prevented the state courts from reaching the merits of the claims." *Jells*, 538 F.3d at 488; *see also* 28 U.S.C. § 2254(b)(1). "Proper exhaustion requires that a petitioner present every claim in the federal petition to each level of the state courts, including the highest state court to which the petitioner is entitled to appeal." *Rayner v. Mills*, 685 F.3d 631, 643 (6th Cir. 2012).

Where a petitioner has not exhausted his claims, but is now procedurally barred from doing so because state-court remedies are no longer available, he must show cause for the noncompliance and actual prejudice to his defense at trial or on appeal. *Id.*; *Jones v. Bagley*, 696 F.3d 475, 484 (6th Cir. 2012). "'Cause' for default requires a showing that 'some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Jells*, 538 F.3d at 488 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "Prejudice," in turn, requires a demonstration that mistakes during the trial "'worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of

constitutional dimensions.'" *Id*. at 488–89 (emphasis omitted) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). A claim of ineffective assistance of counsel invoking *Strickland* is cognizable to show cause and prejudice for a procedural default. *Jones*, 696 F.3d at 484. "A petitioner may also obtain review of his claim if review would prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Id.*

III.

In Ground Three of his habeas petition, Maze alleged as follows:

Trial counsel refused to Submit the Amicus Brief that was going to be favorable evidence for the Petitioner. The Petitioner's wife holds eleven (11) medical doctors[] separate opinions on the medical condition and cause of death of the Petitioner and his wife's infant son. All these doctors wanted to testify at the Petitioner's trial free of charge or fees and without any prejudice. **SEE ATTACHED: Opinions.**

Supporting FACTS . . . . A chronological timeline of events was submitted to the above Doctors, who formed their opinions without being paid and without prejudice. Their professional opinion is solely based on a case[-]by[-]case basis. This timeline of events was submitted by Petitioner's trial counsel as a[n] Exhibit.

The "Amicus Brief" referenced in the habeas petition and submitted to the district court as an exhibit was a compilation of affidavits and opinions of eleven medical experts, all of whom set forth various non-abusive causes and explanations for Bryan's injuries and death. The "Amicus Brief" also included a "Chronology of Events for [Bryan] Alex Maze" from the time of his birth to his death, constructed by Maze's wife and provided to the eleven medical doctors.

In its decision denying habeas relief, the district court held that Ground Three was never raised in the state courts on direct appeal or during post-conviction proceedings; that state-court

remedies for this unexhausted claim were no longer available under Tenn. Code Ann. § 40-30-102 (providing a one-year limitations period for post-conviction relief and a restriction on successive state petitions); and, therefore, this claim was procedurally defaulted for purposes of federal habeas review. The district court further determined that Maze had not shown the requisite cause and prejudice to excuse his procedural default, or a fundamental miscarriage of justice, despite his claim of actual innocence. Consequently, the court found that Maze forfeited the right to federal review of his ineffective assistance of trial counsel claim stated in Ground Three—a determination that Maze challenges in the present appeal.

A.

In Tennessee, exhaustion requires the claim to have been fairly presented to the TCCA. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (citing Tenn. Sup. Ct. R. 39). "A claim is 'fairly presented' for exhaustion purposes where the petitioner presented both the factual and legal basis for his claim to the state courts." *Hanna*, 694 F.3d at 606; *see also Hicks*, 377 F.3d at 552–53 (6th Cir. 2004) ("A petitioner must fairly present to the state courts either the substance of or the substantial equivalent of the federal claim that he is presenting to a federal habeas court. . . . [T]he exhaustion doctrine requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review."). "Fair presentation does not require word-for-word replication." *Bray v. Andrews*, 640 F.3d 731, 735 (6th Cir. 2011) (citation and internal quotation marks omitted). However, § 2254 "requires a federal habeas petitioner to provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). "It is not

enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Id.* (citation omitted). In the specific context of ineffective assistance of counsel claims, "to the extent that an ineffective assistance of counsel claim is based upon a different allegedly ineffective action than the claim presented to the state courts, the claim has not been fairly presented to the state courts." *Caver v. Straub*, 349 F.3d 340, 346–47 (6th Cir. 2003).

## B.

Maze contends on appeal that Ground Three raises exactly the same legal and factual issues that he presented to, and were addressed by, the TCCA—specifically, that trial counsel was unconstitutionally ineffective because he failed to introduce the testimony of a qualified medical expert providing a non-abusive explanation for Bryan's injuries, and because counsel failed to make an offer of proof regarding the testimony of Dr. Yazbak. Maze contends that Dr. Yazbak, as indicated by his testimony at the post-conviction hearing, would have directly contradicted the State's evidence that the only possible cause of Bryan's neurological injuries was child abuse. Maze maintains that these two post-conviction state-court arguments—considered separately or in combination—fully and fairly presented the same factual and legal theories as Ground Three of his federal habeas petition. Thus, according to Maze, the district court erred in dismissing his petition on the ground that it did not replicate "word-for-word" his state court claims.

However, Maze has failed to persuade us that Ground Three advances the same legal and factual theories as his state-court appellate claims. In arguing that the post-conviction claims mirror the same legal theory as Ground Three, Maze relies heavily upon the fact that these claims

assert ineffective assistance of trial counsel and generally relate to causation evidence that trial counsel allegedly should have introduced. But, as respondent aptly points out, the state and federal claims assert that trial counsel was constitutionally ineffective in failing to take very different actions. Maze argued to the TCCA that he was prejudiced by trial counsel's failure to call as a witness a "qualified medical expert" to rebut the State's theory that the victim's "brain and neurological damage" was caused by abuse. He also alleged that he was prejudiced by trial counsel's failure to present Dr. Yazbak's testimony as an offer of proof after the trial court denied trial counsel's request to call the doctor as a defense witness, arguing that the TCCA would not have found that denial harmless had an offer of proof been available.

By contrast, Ground Three alleges that trial counsel was ineffective in failing to submit into evidence a particular document containing affidavits from multiple doctors relating to "the medical condition and cause of death of [Bryan]"—a different instance of alleged inaction on counsel's part, requiring separate evaluation of counsel's conduct in the context of these specific medical opinions and any resulting prejudice. The TCCA never had the opportunity to consider the claim that trial counsel should have presented the eleven medical opinions contained in the Amicus Brief or that counsel's failure to do so prejudiced Maze's defense. In arguing otherwise, Maze attempts improperly to reformulate all three claims as general allegations that trial counsel was ineffective in failing to present medical evidence on the cause of Bryan's death. His attempt, however, does not satisfy the requirements of the exhaustion doctrine. *See Caver*, 349 F.3d at 346–47.

Moreover, Maze's post-conviction claims and Ground Three differ in their factual underpinnings, with the latter advancing different and expanded factual theories as to the cause of Bryan's death. Although Dr. Barnes' and Dr. Yazbak's medical opinions are common to both the post-conviction and habeas claims, the Amicus Brief includes the opinions of nine additional physicians who, with varying degrees of certainty, suggest other possible causes of death not previously advanced in Maze's post-conviction arguments—such as hepato-cellular necrosis or liver damage, anti-convulsant drugs, vaccinations, and severe anemia. Two of the affiants in the Amicus Brief testified on Maze's behalf at trial, but Maze did not place the testimony of seven of the eleven doctors before the TCCA during the post-conviction proceedings. We further note that the medical opinions proffered in affidavit form are not signed or notarized and post-date Maze's trial (listing merely the year 2007), and other reports likewise are dated after the fact. Thus, it would appear that much of the evidence contained in the Amicus Brief was not even available to Maze's trial counsel to proffer at the time of the trial.[3]

Consequently, in light of Maze's failure to present "the same claim under the same theory" to the state and federal courts, *Hicks*, 377 F.3d at 552, the district court did not err in determining that Ground Three was procedurally defaulted. *See Landrum v. Mitchell*, 625 F.3d 905, 919 (6th Cir. 2010) ("Landrum procedurally defaulted his claim that his trial counsel was constitutionally ineffective for failing to introduce . . . testimony during the guilt phase because he failed to raise this [particular] claim on direct appeal and in his post-conviction petition."); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (holding that the "[p]etitioner's second ineffective assistance

---

[3]Maze's trial counsel did not represent him during his post-conviction proceedings.

claim [raised in her habeas petition] rests on a theory which is separate and distinct from the one previously considered and rejected in state court" and therefore she procedurally defaulted this claim); *Pillette v. Foltz*, 824 F.2d 494, 497–98 (6th Cir. 1987) (holding that the habeas petitioner did not exhaust his ineffective assistance of counsel claim, which was based on his counsel's failure to object to an expert's testimony on behalf of a codefendant in joint trial, where his ineffective assistance of counsel claims raised during the state-court appeal process relied upon different grounds).   Maze failed to exhaust Ground Three by presenting it to the TCCA, and he is prevented from doing so now by the statute of limitations in Tenn. Code Ann. § 40-30-102.

C.

Maze argues that even if Ground Three is procedurally defaulted, the "actual innocence" exception applies in this case. A credible claim of actual innocence may serve to equitably toll AEDPA's statute of limitations. *Bell v. Howes*, 703 F.3d 848, 854 (6th Cir. 2012). However, such a claim is "extremely rare" and the exception should be applied only in the "extraordinary case." *Id.* (citations omitted). "[A]ctual innocence does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." *Id.* (citations and internal quotation marks omitted). "To raise the claim, a petitioner must present new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial[,]" and the habeas court must then consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Id.* (citations and internal quotation marks omitted).

Maze contends that he has "new reliable evidence" of actual innocence, asserting that in the last ten to fifteen years new scientific studies have discredited the previous consensus that infants exhibiting a triad of symptoms are the victims of SBS; rather, it is now known that there are other causes of this triad or its components, including accidental injury, non-traumatic medical conditions, and diseases. In addition to this medical literature, Maze cites the post-conviction hearing testimony of Dr. Barnes, who opined that under both the old and new diagnostic standards, the damage to Bryan's brain was not characteristic of SBS, but more likely was caused by coagulopathy, a condition that probably arose well before the May 3, 1999, incident.

We are not convinced that this is an "extraordinary case" that qualifies for application of the actual innocence exception. Our court has acknowledged the controversy surrounding a diagnosis of SBS and the ongoing debate in the scientific community regarding the accuracy of the SBS triad. *See Flick v. Warren*, 465 F. App'x 461, 465 (6th Cir. 2012); *Lutze v. Sherry*, 392 F. App'x 455, 458–59 (6th Cir. 2010). The debate continues and does not suggest that the presence of the triad symptoms is inconsistent with abuse.

Significantly, in the present case, as in *Lutze*, while "[t]he challenges to the scientific underpinnings of SBS center on other, natural explanations for brain injuries that are often attributed to shaking[,] [h]ere . . . the diagnosis [of SBS] was not based solely on the [victim's] brain injuries" or triad symptoms, but evidence of blunt force trauma as well. *Lutze*, 392 F. App'x at 459. Although Dr. Barnes reviewed Bryan's medical records, CT scans, MRI images, and x-rays, he testified that he did not review any of the photographs taken of the victim—which showed bruising to Bryan's head and abdomen—or any other evidence of traumatic injury to the victim, including a fractured clavicle. The prosecution's experts agreed that considering all of these significant injuries, there was no explanation other than abuse that would account for Bryan's condition. Thus, there was "ample testimony provided at trial demonstrating the severity of [Bryan's] abuse that extended well beyond being shaken."

The prosecution also relied upon non-medical evidence, including inconsistencies in Maze's behavior and statements to the police and his concession, after earlier denials, that he might have shaken or "jostled" Bryan in an attempt to revive him and thus could have caused the injury to Bryan's clavicle.

In light of this substantial evidence of abuse, Maze has not met the high threshold necessary to excuse a procedural default. Importantly, "actual innocence means factual innocence, not mere legal insufficiency." *Bell*, 703 F.3d at 854 (citation and internal quotation marks omitted). In the case at hand, Maze's evidence does not demonstrate that had it been presented to the jury, "it is more likely than not that no reasonable juror would have found [Maze] guilty beyond a reasonable doubt[.]" *Cleveland v. Bradshaw*, 693 F.3d 626, 633 (6th Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

IV.

In Ground Four, Maze contends that trial counsel "was incompetent and failed to test the adversary system, by consulting with a radiologist (X-Ray Expert) and not a [n]eurologist an [e]xpert on [b]rain function and injuries." The district court held that this claim was exhausted—having been fully litigated in the state courts and found to be lacking in merit—and that the TCCA's application of the *Strickland* standard to this claim did not run afoul of 28 U.S.C. § 2254(d). On appeal, Maze argues that the TCCA's *Strickland* analysis was objectively unreasonable. We disagree.

Section 2254(d) of AEDPA has been construed by the courts to be a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (citation and internal quotation marks omitted). The habeas petitioner bears the burden of proof. *Id.* Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Id.* at 1399.

"A state-court decision is contrary to clearly established federal law if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Foster v. Wolfenbarger*, 687 F.3d 702, 706 (6th Cir. 2012) (citation and internal quotation marks omitted). "An unreasonable application of federal law is one where the state court either correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case, or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context." *Id.* (citation and internal quotation marks omitted). "In conducting our review the proper inquiry is whether the state court decision was objectively unreasonable and not simply erroneous or incorrect." *Drummond v. Houk*, 728 F.3d 520, 525 (6th Cir. 2013) (citation and internal quotation marks omitted). Thus, in applying the unreasonable application clause, we must be careful not to substitute our judgment for that of the state court. *Id.*

We review Ground Four under the familiar framework established in *Strickland*, which governs Maze's ineffective assistance of counsel claim. Under this standard, Maze must show not only that his counsel's performance was constitutionally deficient, but also that the deficiency prejudiced the defense sufficiently to undermine the reliability of the trial. *Strickland*, 466 U.S. at 687. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a

result of the alleged deficiencies[,]" and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

Here, we need not address the deficiency prong, because Maze has failed to show that the TCCA's prejudice determination constituted an unreasonable application of federal law. "In order to demonstrate prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Hanna*, 694 F.3d at 612–13 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is defined as 'a probability sufficient to undermine confidence in the outcome'; certainty of a different outcome is not required." *Id.* at 613 (quoting *Strickland*, 466 U.S. at 694). "Thus, analysis focusing solely on mere outcome determination, without attention to whether the proceeding was fundamentally unfair or unreliable, is defective." *Id.* (citation and internal quotation marks omitted). "Surmounting *Strickland's* high bar is never an easy task[,]" but "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (internal quotation marks omitted). And "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Maze argues that because of trial counsel's failure to consult with a radiologist, counsel had no basis for challenging the state's experts' interpretation of the MRIs and CT scans and their conclusions that shaking was the only possible cause of Bryan's injuries. Maze contends that the post-conviction testimony of Dr. Barnes demonstrates that there is a reasonable probability that the

outcome of the trial would have been different if trial counsel had shown the brain images to a qualified expert. However, we do not find TCCA's contrary conclusion to be an unreasonable application of *Strickland*.

In analyzing Maze's claim on post-conviction appeal, the TCCA correctly identified and applied *Strickland* as controlling legal authority. The TCCA found neither deficiency nor prejudice in trial counsel's consultation decisions, holding with regard to the prejudice prong that:

> [t]rial counsel effectively cross-examined the State's expert witnesses concerning multiple theories on the cause of the victim's injuries. Through cross-examination of Dr. Ian Jones, trial counsel pointed out various errors and omissions in the hospital notes, such as failure to note bruising and to show whether Dr. Jones had inquired about birth defects or other aspects of the victim's medical history. His notes also incorrectly reflected that the victim was born full-term. During cross-examination of Dr. Suzanne Starling, trial counsel attempted to identify medical mistakes and link the victim's injuries to pre-existing medical conditions. She was questioned about the mother's pregnancy complications, and she agreed that retinal hemorrhaging can be the natural result of child birth. Dr. Starling was also questioned about the adverse side effects of the Hepatitis B vaccine. She conceded that the scientific community disagreed on whether infant shaking, without impact, can cause subdural hematomas and retinal hemorrhages. On cross-examination by trial counsel, Dr. Mark Jennings testified that there is an existing dispute as to whether infant shaking alone can cause subdural hemorrhages, and he acknowledged that a traumatic delivery involving forceps can cause such hemorrhages. The victim's pediatrician, Dr. Lesa Sutton–Davis, was also cross-examined about mercury contained in the Hepatitis B vaccine that the victim received, and she noted that "mercury was later removed from the vaccine 'because there was a theoretical concern about causing brain damage,' but '[i]t was never proven.'"
>
> Furthermore, as noted by the post-conviction court, Dr. Barnes' testimony at the post-conviction hearing was speculative and in direct contravention to the State's experts and to his previous position on the subject. The State presented evidence that in addition to the brain injury, the victim suffered a fractured collarbone, and there was bruising about his body. Dr. Barnes admitted that his testimony concerning coagulopathy was speculative "since the proper testing wasn't done." He agreed that the medical community regards subdural hemorrhage and subarachnoid hemorrhage in a child the victim's age as evidence of trauma unless

> proven otherwise. He further agreed with the eye findings in the ophthalmology notes which reflected that non-accidental injury should be considered in the absence of a blood or clotting disorder. Dr. Barnes was aware that the treating physicians in the victim's case tested for venous thrombosis and ruled it out. We conclude that Petitioner has failed to show that trial counsel's assistance fell below acceptable standards or that Petitioner was prejudiced by any aspect of his trial counsel's assistance. Petitioner is not entitled to relief on this issue.

Maze, 2010 WL 4324377 at *27–28 (citations omitted).

As the TCCA explained in detail, although trial counsel did not consult with a neurologist such as Dr. Barnes, counsel presented a significant amount of medical testimony in an attempt to demonstrate that Maze did not abuse the victim and, alternatively, that the victim's brain injury did not cause his death. Under the rigorous AEDPA and *Strickland* standards, Maze has failed to show that the "likelihood of a different result" is "substantial, not just conceivable," had trial counsel consulted with a radiologist. *Harrington*, 131 S. Ct. at 792.

V.

For the foregoing reasons, we affirm the district court's denial of habeas relief to Maze.