**NOT RECOMMENDED FOR PUBLICATION**
File Name: 17a0657n.06

**No. 16-2438**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ANTHONY WEST, | ) | **FILED** |
| | ) | Nov 28, 2017 |
| Petitioner-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| MARY BERGHUIS, Warden, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | OPINION |
| | ) | |
| | ) | |

**BEFORE:** **GILMAN, SUTTON, and STRANCH, Circuit Judges.**

**STRANCH, Circuit Judge.** Anthony West, a Michigan inmate, pled guilty to second-degree murder and possession of a firearm during the commission of a felony. Receiving no relief from his conviction in state court, West filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He appeals the judgment of the district court denying his petition. We AFFIRM.

## I.    OVERVIEW

### A.    Background and Procedural History

#### 1. Factual Background

This case arose from events that transpired on April 15, 2009, in Detroit, Michigan. West had been residing with his then-girlfriend, Meesha Starks, her daughter Jasmine Godboldo, and Goldboldo's fiancé, Brian Garner. During the course of an argument, Starks removed West's

belongings from the residence, put the items on the porch, and asked West to vacate the residence.

Godboldo testified at West's preliminary hearing that West and Garner exited the residence and were standing approximately 10 feet from the house when an argument ensued. Godboldo testified that West stated "I'm not a punk as[s] nigga," drew a gun, pointed it at Garner, and fired five shots at close range. Garner suffered a single fatal gunshot wound to the back.

Prosecutors and investigators obtained a sworn statement from Meesha Starks. Starks said that once Garner had escorted West from the home, West attempted to go back, and Garner pushed him in an effort to keep him from returning to the house. It was only after being pushed that West pulled a gun on Garner, Starks stated, and West did not point the weapon directly at Garner. Starks indicated that West fired five shots in rapid succession, pointing the gun at the ground. Garner then walked into the street and collapsed, bleeding.

In support of his claim of self-defense, West points to statements made by neighbors who observed the altercation. Brianna Williams and Andrea Skinner both gave statements to police regarding the incident. Williams told police that the tall man (Garner) grabbed the short man (West), started to shake him, and said "can't nobody fuck with me." Williams also stated that after this altercation, West pulled out a gun and fired three times toward the ground. Similarly, Skinner told police that Garner was returning to the house when West made a statement causing Garner to turn toward him; Garner then grabbed West with both hands and pushed him toward the street. Skinner stated that Garner used such force that it was "like [Garner] was playing with a doll." Skinner observed that West fired three times, downward towards Garner's midsection.

West also references his own statement to investigators that Garner pushed him to the ground and, when West tried to walk away, Garner pursued him. West stated that "I wanted to get him off of me so I started shooting. I thought he was going to hurt me."

2. Legal Proceedings

West was bound over for trial on charges of first-degree premeditated murder, possession of a firearm during the commission of a felony, and being a felon in possession of a firearm. On August 14, 2009, the trial court held a pretrial hearing at which the prosecution offered West a plea deal of 23 years imprisonment followed by a mandatory two years of imprisonment for the firearms offense, which he declined.

The transcript of the pretrial hearing indicates that West's relationship with trial counsel had soured. West had made several phone calls from jail, allegedly in an attempt to solicit favorable testimony from Starks. Trial counsel revealed these conversations to the court and expressed exasperation with West, stating that working with him was "impossible." Counsel was openly dismissive of West's self-defense claims and expressed doubt that Skinner's testimony would be favorable. West also told the court that trial counsel had failed to review discovery with him, an assertion that trial counsel vehemently denied.

On October 5, 2009, West pled guilty to the reduced charge of second-degree murder and possession of a firearm during the commission of a felony. The trial court conducted a plea colloquy during which West stated his understanding that he was giving up his right to a trial and that his plea was voluntary. The court inquired into the factual basis of West's plea. West acknowledged that he shot Garner and that his intent was to kill or cause great bodily harm. The trial court found that the plea was knowing, voluntary, and intelligently made.

West was sentenced to 20 to 40 years with a mandatory 2-year consecutive sentence for the firearm offense. He filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The district court denied the petition, but granted a certificate of appealability (COA) regarding West's claim that his guilty plea was not intelligent and voluntary because his trial counsel was ineffective. West applied to this court to expand the COA to include other claims raised in his habeas corpus petition, but that motion was denied. *West v. Berghuis*, No. 16-2438 (6th Cir. Apr. 25, 2017) (order). The sole matter before us is whether West's trial counsel was constitutionally ineffective, rendering West's guilty plea unintelligent and involuntary.

## II. STANDARD OF REVIEW

We review the district court's conclusions of law in a habeas corpus action de novo and its findings of fact for clear error. *Hand v. Houk*, 871 F.3d 390, 406 (6th Cir. 2017). Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), state court determinations receive deferential review. 28 U.S.C. § 2254(d). In this case, the Michigan Court of Appeals considered West's claims of ineffective assistance of counsel and denied leave to appeal on the basis that West's claims lacked merit. *People v. West*, No. 309821, 2013 WL 6633985, at *1 (Mich. Ct. App. Dec. 5, 2013). The Michigan Supreme Court denied leave to appeal. *People v. West*, 847 N.W.2d 628 (Mich. 2014). Because the merits of West's claim were reached below, AEDPA restricts the availability of habeas relief:

> When a claim has been adjudicated on the merits in State court proceedings, AEDPA restricts the availability of federal habeas relief to two circumstances. First, habeas relief is available when a state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. And second, habeas relief is available when a state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 459–60 (6th Cir. 2015) (internal quotation marks and citation omitted); *see also Foster v. Wolfenbarger*, 687 F.3d 702, 706 (6th Cir. 2012). A state court decision is contrary to established federal law if the court arrives at a

conclusion on a question of law that is opposite to that of the Supreme Court or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Lovins v. Parker*, 712 F.3d 283, 293–94 (6th Cir. 2013). "A state-court decision unreasonably applies clearly established law if 'the state court identifies the correct governing legal principle from the [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 294 (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).

## III.    ANALYSIS

### A.  Ineffective Assistance of Counsel Claim

#### 1.  Legal Standard

The right to effective assistance of counsel extends to plea bargaining. *Missouri v. Frye*, 566 U.S. 134, 140–41 (2012). The two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984), frames our analysis of claims of ineffective assistance of counsel arising in the context of guilty pleas. *Frye*, 566 U.S. at 140–41. A defendant must show that counsel's performance fell below an objective standard of reasonableness and "must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Strickland*, 466 U.S. at 694). In other words, once a defendant demonstrates that counsel's performance was deficient, she must "show 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

#### 2.  Deficient Performance

West alleges that trial counsel was deficient because he failed to adequately investigate the statements Skinner and Williams gave to police and instead coerced him into a plea bargain. Had counsel adequately investigated these witnesses, West argues, he could have pursued a

viable self-defense or accident claim and received a more favorable outcome at trial. West states that the resolution of these claims by the Michigan courts was unreasonable in light of *Tollet v. Henderson*, 411 U.S. 258 (1973). *Tollet* held that "[i]f a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases'" to obtain habeas relief. *Id.* at 266 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

The record does not reveal precisely what, if any, steps trial counsel undertook with regard to pretrial investigation and these two witness statements in particular. West does not dispute that Williams's statement was in the possession of trial counsel. It is debatable on this record, however, whether counsel was fully cognizant of Williams's statement, which is arguably the stronger of the two statements because it says that Garner assaulted West and that West did not fire directly at Garner. The record reveals that counsel was aware of the statement made by Skinner, of West's desire to pursue an accident or self-defense claim, and West's belief that these defenses were viable. Skinner's statement was helpful to West insofar as she indicated that Garner assaulted West, shaking him so forcefully that it appeared as if he was "playing with a doll." Skinner's statement to police, however, also indicated that West fired three times at Garner's midsection. The record is clear that although counsel knew of Skinner's statement at the August 14 pre-trial hearing, he believed it was not helpful, and rejected self-defense as a viable defense.

As West notes in his petition for habeas corpus, trial counsel has been disciplined no less than 16 times by the Michigan Attorney Discipline Board, 14 of which occurred prior to West's conviction. Subsequent to West's conviction, trial counsel was suspended twice from the practice of law, the second resulting from his 2014 criminal conviction for larceny. West also

notes that trial counsel's fee arrangement increased, purportedly requiring a very large additional payment to ensure that West secured a sentence of 10 to 15 years. Counsel's handling of the case, his comments during the August 14 pretrial hearing—particularly his revelation to the court that West had contacted a potential witness in an effort to secure favorable testimony— and his limited investigation raise significant questions about the adequacy of representation. Counsel's actions in this case, as well as his record in prior representations, are concerning.

Although we are troubled by some of the actions of counsel, we cannot conclude that his strong advice to West to enter the plea agreement was outside the reasonable range of professional competence. Counsel was aware of an autopsy report showing that Garner was killed by a single bullet to the back, along with statements showing that all four witnesses would have testified that West was the shooter and at least one, Godboldo, had already testified that West was the aggressor. Even though elements of the statements of Skinner and Williams might have provided support to West's self-defense claim, all statements indicate that Garner stepped back and West then fired three to five shots at close range. Although Williams would have likely testified that West did not aim at Garner, that testimony is contradicted by the testimony of Godboldo and the statement of Skinner, on which West sought to rely. In light of the statements of the four witnesses, if West went to trial, there was a legitimate risk of conviction on the more serious charge of first-degree murder. Although it might have been possible for counsel to pursue alternative strategies, *Strickland* provides considerable latitude to the strategic decisions of counsel. *Strickland*, 466 U.S. at 681. Given the risk of a full trial, advising West to plead guilty is not outside the range of competent professional advice. The Michigan courts' determination that counsel was not ineffective is reasonable in light of guiding Supreme Court precedent that "[t]here are countless ways to provide effective assistance in any given case.

Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.* at 689.

### 3. Prejudice

Even if we assumed deficient performance, to establish prejudice as required by *Strickland*, West must demonstrate a reasonable likelihood that he would have elected to stand trial, and had he done so, that he would have received a more favorable outcome than his plea agreement. As the district court noted, at his pre-trial hearing, West believed that a more favorable plea offer was forthcoming and trial counsel disagreed that such an offer would be made. The prosecution did make a more favorable offer on the eve of trial, which West ultimately accepted. The record does not tend to show that West desired to go to trial; it indicates that West wanted and obtained a more favorable plea agreement. *See Hill*, 474 U.S. at 59 (holding that in order to satisfy the prejudice prong of *Strickland* in a plea agreement, the defendant must demonstrate a reasonable probability that, but for counsel's errors, she would have proceeded to trial).

Had West gone to trial, moreover, we are not convinced that there was a reasonable probability that the outcome would have been more favorable. As mentioned above, although Williams's statement suggests that she would have testified that West fired into the ground, Skinner stated that West fired directly at the victim. Thus, the prosecution had at least two witnesses, Godboldo and Skinner, who would have testified that West pointed the gun at Garner and fired three, if not five, shots at close range. The statements of Godboldo and Starks also indicate that Garner did not physically provoke West, further undermining any claim to self-defense. Though the statements of Williams and Skinner add some credence to West's contention that he acted in self-defense, they are insufficient to conclude that the outcome would have been different at trial. Had West gone to trial, the outcome could have been much worse;

-8-

he would have been tried on a first-degree murder charge, conviction of which would have yielded a sentence of life without the possibility of parole. *See* M.C.L. § 750.316. In sum, even assuming that trial counsel's performance was deficient, West has failed to demonstrate a reasonable likelihood of a more favorable outcome had he gone to trial. *See Lafler,* 566 U.S. at 163 (holding that to establish prejudice a petitioner must demonstrate that a more favorable outcome could have been achieved with the benefit of competent counsel).

West's claims, therefore, are unsuccessful under both prongs of *Strickland*. He has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness and he has failed to show that he was prejudiced by his decision to plead guilty. Accordingly, we cannot say that the decisions of the Michigan courts were an unreasonable application of federal law. Habeas relief is, therefore, not warranted under the deferential standards of AEDPA.

## B. Voluntariness of the Plea Agreement

It follows from our conclusion that trial counsel was not ineffective that West's plea was knowing and voluntary. "[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards" of effective representation. *Hill*, 474 U.S. at 56–57 (quoting *Tollett,* 411 U.S. at 267). Because West has failed to demonstrate that counsel was ineffective, his claim that his plea was involuntary also fails. The record, moreover, shows that the trial court inquired into the factual basis of the plea and West's responses show that he made a knowing and intelligent waiver of his right to trial.

## IV. CONCLUSION

For these reasons, we **AFFIRM** the decision of the district court and **DENY** West's petition for a writ of habeas corpus.